# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

JAMES R. LUCAS,

    *Plaintiff,*

vs.

DADSON MANUFACTURING CORP. and PETER B. LUCAS,

    *Defendants.*

Case No. 2:20-CV-02509-EFM-JPO

**MEMORANDUM AND ORDER**

Before the Court are Defendant Peter B. Lucas's Motion to Dismiss (Doc. 13) and Defendant Dadson Manufacturing Corporation's Motion to Dismiss (Doc. 14). For the reasons stated below, the Court grants both Defendants' Motion to Dismiss.

**I.    Factual and Procedural Background[1]**

Plaintiff James Lucas served as Defendant Dadson Manufacturing Corporation's Chief Executive Officer ("CEO") and Chairman of the Board ("COB") for nearly 11 years. Defendant Peter Lucas served under him as the Chief Operating Officer ("COO") and was promoted to president following Plaintiff's dismissal from the company.

---

[1] All facts and inferences are taken in the light most favorable to the non-movant, Plaintiff James Lucas.

While serving as CEO and COB, Plaintiff James Lucas took deferred salary for approximately three years and eight months. During that time, he also made loans to Dadson from his personal retirement account. In December 2018, Plaintiff sued Dadson in Johnson County District Court to recover his deferred salary and loans ("Johnson County Proceeding"). During the trial, new-president Peter Lucas testified that James Lucas had been overpaid for his personal loans and that James Lucas had been stealing from Dadson. The jury awarded James Lucas $278,066.05 in deferred salary but awarded Dadson $117,328.64 for conversion of the overpaid loans, $400,000 for James Lucas's breach of fiduciary duty, and opened the door for Dadson to seek punitive damages against James Lucas.

Shortly after the verdict, James Lucas received evidence from a US Bank employee that Peter Lucas had been the one stealing Dadson funds. James Lucas moved for a new trial based on newly discovered evidence, but the motion was denied. Shortly thereafter, James Lucas and Dadson reached a settlement agreement by stipulation. The settlement agreement foreclosed Dadson's ability to seek punitive damages or further action against James Lucas. It also prevented James Lucas from bringing further actions against Dadson and several other listed parties, including Defendant Peter Lucas and Plaintiff's then-wife Pamela Lucas. In addition, the agreement partially resolved a pending divorce between James Lucas and Pamela Lucas.

In July 2019, James Lucas brought a lawsuit against Dadson and Nancy F. Peterson (owner of 100% of Dadson's stock) in Jackson County, Missouri, for employment fraud and other claims. The case was dismissed based on res judicata and collateral estoppel. That decision was affirmed by the Missouri Court of Appeals.

During a division of marital assets in August 2019, Pamela Lucas received attorney fees for the earlier Johnson County Proceeding. James Lucas claims that this was a breach of the

Johnson County Proceeding settlement agreement that purportedly resolved their divorce, which entitled him to rescind that contract. A flurry of legal actions has followed. James Lucas launched a complaint against the judge who presided over both the initial Johnson County Proceeding and the divorce proceeding. The Kansas Commission on Judicial Conduct dismissed the complaint. James Lucas also brought suit against Peter Lucas for somewhat related claims of theft from two other companies. That case is currently pending in Johnson County District Court.

Before this Court is another action related to the alleged breach. In Count I, James Lucas prays for payment of his deferred salary plus interest, which was awarded in the Johnson County Proceeding—but offset by damages awarded to Dadson. In Count II, he prays for repayment of personal loans to Dadson plus interest, for which the Johnson County Proceeding jury found against him. In Count III, he prays for a waiver of false charges and related penalties, based on Peter Lucas's testimony at the Johnson County Proceeding. In Count IV, he prays for damages related to Pamela Lucas's breach of the settlement agreement. In Count V, he prays for punitive damages.

## II. Legal Standard

Because Plaintiff appears pro se in this case, the Court must liberally construe his pleadings.[2] If a court can reasonably read a pro se complaint in such a way that it could state a claim on which the plaintiff could prevail, it should do so despite "failure to cite proper legal authority . . . confusion of various legal theories . . . or [Plaintiff's] unfamiliarity with pleading requirements."[3] The Court, however, is not an advocate for the pro se litigant.[4] "Despite the

---

[2] *See Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007) ("Because Mr. Trackwell appears pro se, we review his pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys.") (citation omitted).

[3] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citation omitted).

[4] *Id.*

liberal construction afforded pro se pleadings, the court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues."[5]

A.     **Motion to Dismiss for Lack of Subject Matter Jurisdiction**

"Federal courts are courts of limited jurisdiction."[6] A presumption exists against jurisdiction, and "the burden of establishing the contrary rests upon the party asserting jurisdiction."[7] "Motions to dismiss for lack of subject matter jurisdiction 'generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based.'"[8] If the motion challenges the sufficiency of the complaint's jurisdictional allegations, the Court must accept all factual allegations as true.[9] If the motion challenges the facts allowing jurisdiction, the Court is not required to accept the complaint's factual allegations as true.[10] When jurisdictional facts are disputed, the Court has "wide discretion to allow affidavits, other documents, and a limited evidentiary hearing" without converting the motion to a Rule 56 motion.[11]

B.     **Motion to Dismiss for Lack of Personal Jurisdiction**

"The plaintiff bears the burden of establishing personal jurisdiction, but where, as here, the issue is raised early on in litigation, based on the pleadings (with attachments) and affidavits, that

---

[5] *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (citation omitted).

[6] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

[7] *Id.* (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182–83 (1936)).

[8] *City of Albuquerque v. U.S. Dep't of Interior*, 379 F.3d 901, 906 (10th Cir. 2004) (quoting *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002), *cert. denied,* 538 U.S. 999 (2003)).

[9] *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).

[10] *Id.* at 1003.

[11] *Id.* (citations omitted).

burden can be met by a prima facie showing."[12] The Court accepts as true all well pleaded, non-conclusory facts alleged in the plaintiff's complaint, and all factual disputes are resolved in the plaintiff's favor.[13]

The party seeking to establish personal jurisdiction over a non-resident defendant must make two showings.[14] First, the party must show that jurisdiction is legitimate under the forum state's long arm statute.[15] Second, it must show that jurisdiction does not offend the Due Process Clause of the Fourteenth Amendment.[16] The Kansas Supreme Court has interpreted Kansas's long-arm statute to extend jurisdiction to the fullest extent allowed by the Due Process Clause.[17] Thus, the Court need only complete the Due Process analysis.[18]

The Due Process Clause allows the exercise of personal jurisdiction over a non-resident defendant "only so long as there exist 'minimum contacts' between the defendant and the forum state."[19] "The 'minimum contacts' standard may be met . . . . if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate' to those activities."[20] This involves a two-step inquiry: (1) whether "defendant's conduct and connection with the forum State are such that he should reasonably

---

[12] *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011) (citation omitted).

[13] *Id.*

[14] *Emp'r's Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010).

[15] *Id.* (citing *TH Agric. & Nutrition, LLC v. Ace Eur. Grp. Ltd.*, 488 F.3d 1282, 1286–87 (10th Cir. 2007)).

[16] *Id.*

[17] *Merriman v. Crompton Corp.*, 282 Kan. 433, 146 P.3d 162, 179 (2006) (citation omitted).

[18] *See Emp'r's Mut.*, 618 F.3d at 1159 (citation omitted).

[19] *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090 (10th Cir. 1998) (citation omitted).

[20] *Id.* at 1091 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1984) (internal quotation marks omitted)).

anticipate being haled into court there;"[21] and (2) "whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice."[22] The Supreme Court has further held that "[f]or a state to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State."[23] A court may also exercise general jurisdiction if the defendant's contacts with the forum state, while unrelated to the alleged activities upon which the claims are based, are nonetheless "continuous and systematic."[24]

### III. Analysis

Both defendants raise challenges under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, Rule 12(b)(2) for lack of personal jurisdiction, Rule 12(b)(7) for failure to join a party under Rule 19, and Rule 12(b)(4) for insufficient process.[25] Defendant Peter Lucas raises an additional challenge to jurisdiction based on a concurrent pending lawsuit in state court.

### A. Failure to State a Claim and Lack of Subject Matter Jurisdiction

Peter Lucas and Dadson assert that the complaint fails to state a claim for Counts I through IV under the *Rooker-Feldman*[26] doctrine, moving for dismissal under Rule 12(b)(6). In practice,

---

[21] *Benton v. Cameco Corp.*, 375 F.3d 1070, 1078 (10th Cir. 2004) (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

[22] *Id.* at 1075–76 (citing *OMI Holdings,* 149 F.3d at 1091)).

[23] *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

[24] *Doering ex rel. Barrett v. Copper Mountain, Inc.*, 259 F.3d 1202, 1210 (10th Cir. 2001).

[25] In his responses to the Defendants' challenges for insufficient process, Plaintiff James R. Lucas briefly mentioned that the Defendants' answers and dispositive motions were untimely. His calculation is based on service of the original complaint. Because James Lucas served an amended complaint on November 30, 2020, however, the present motions to dismiss were timely as they were filed on December 14, 2020. *See* Fed. R. Civ. P. 15(a)(3).

[26] *See Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983).

the doctrine acts as a challenge to subject matter jurisdiction,[27] and this Court will analyze it as such.

The *Rooker-Feldman* doctrine bars federal review of state court judgments "where (1) the plaintiff lost in state court, (2) the state-court judgment caused the plaintiff's injuries, (3) the state court rendered judgment before the federal claim was filed, and (4) the plaintiff is asking the district court to review and reject the state judgment."[28] *Rooker-Feldman* does not apply to claims that would be identical to state court claims, nor to "claims that do not rest on any allegation concerning the state-court proceedings or judgment."[29] *Rooker-Feldman* also bars federal district courts from issuing "any declaratory relief that is 'inextricably intertwined' with the state court judgment."[30] An action is inextricably intertwined when it is not " 'separable from and collateral to' a state court judgment."[31] Applicability of the *Rooker-Feldman* doctrine is determined by the relief sought.[32]

### 1. Count I – Deferred Salary Enforcement

James Lucas first asks this Court to enforce the deferred salary awarded to him in the Johnson County Proceeding.[33] The Defendants incorrectly assert that this enforcement is barred under the *Rooker-Feldman* doctrine. Because the state court entered a favorable judgment for

---

[27] *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1193 (10th Cir. 2010) (citation omitted).

[28] *Mkt. v. City of Garden City*, 723 F. App'x 571, 572–73 (10th Cir. 2017) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

[29] *Bolden v. City of Topeka*, 441 F.3d 1129, 1145 (10th Cir. 2006)

[30] *Kiowa Indian Tribe of Okla. v. Hoover*, 150 F.3d 1163, 1169 (10th Cir. 1998) (quoting *Facio v. Jones*, 929 F.2d 541, 543 (10th Cir. 1991)).

[31] *Id.* at 1170 (citation omitted).

[32] *See PJ ex rel. Jensen*, 603 F.3d at 1193 ("Additionally, our recent *Rooker-Feldman* jurisprudence has emphasized the relief sought by federal-court plaintiffs.") (citing *Mo's Express, LLC v. Sopkin*, 441 F.3d 1229, 1237 (10th Cir. 2006)).

[33] In his amended complaint, Plaintiff James Lucas asserts that this Court should enforce the judgment pursuant to K.S.A. 60-1701, 60-1703-05, 60-1707, and 60-1713. These Kansas statutes address declaratory judgments in the state and have no bearing on this Court's jurisdiction of the claim.

James Lucas on this issue, he does not request review of a state court judgment, and the *Rooker-Feldman* doctrine is inapplicable to Count I.

"Federal courts . . . 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.' "[34] This Court could not locate binding authority authorizing federal enforcement of state court judgments, but the Tenth Circuit has recently discussed the issue.[35] In *Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, a plaintiff won a $190 million judgment in Florida state court before seeking enforcement in a federal district court to take advantage of federal collection procedures.[36] Although the plaintiff sought judgment under 28 U.S.C. § 1738, the U.S. District Court for the District of Utah registered the state court's judgment pursuant to 28 U.S.C. § 1963.[37] The plaintiff then moved to alter or amend the judgment, and appealed to the Tenth Circuit after his motion was denied.[38]

The Tenth Circuit first addressed the district court registering the judgment under section 1963, which provides that judgments for the recovery of money in one federal court may be registered to another federal court once the judgment is final.[39] It elected to "join the courts holding that § 1963 applies only to registration of federal-court judgments in federal courts—not to state-court judgments."[40] Thus, the Circuit held that section 1963 did not give the district court subject

---

[34] *Havens v. Colorado Dep't of Corr.*, 897 F.3d 1250, 1360 (10th Cir. 2018) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)).

[35] *See Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, 945 F.3d 1270 (10th Cir. 2019).

[36] *Id.* at 1272–73.

[37] *Id.* at 1273.

[38] *Id.*

[39] *Id.* at 1273–74.

[40] *Id.* at 1274.

matter jurisdiction over the claim.[41] The Tenth Circuit also addressed the plaintiff's argument regarding section 1738, which establishes that state judicial proceedings have the same full faith and credit in every court within the United States as they do in the state "from which they are taken."[42] The court held that section 1738 is a rule of decision, not a basis for jurisdiction, and "has no bearing on the question of whether a district court has subject matter jurisdiction to hear a claim."[43] Thus, section 1738 also did not provide a basis for subject matter jurisdiction over the plaintiff's claim. Although the court ultimately held that the district court had jurisdiction over the plaintiff's claim, it did so on other grounds that are not applicable to James Lucas's claim.

Because James Lucas has failed to cite any authority that would give this Court subject matter jurisdiction over his claim, and because the Tenth Circuit recently rejected 28 U.S.C. §1738 and §1963 as grounds for subject matter jurisdiction, Count I is dismissed for lack of subject matter jurisdiction.

2. *Count II – Repayment of Personal Loans*

James Lucas next asks this Court to require repayment of his personal loans made to Dadson. This issue was also decided in the December 2018 Johnson County Proceeding. During the original trial, James Lucas claimed to be owed $167,506.61 from Dadson in personal loans. The jury instead found that James Lucas was overpaid by $117,328.64. Count II does not ask this Court to review the state court decision or overrule the state court's overpayment award. Instead, it seems to ignore the state decision altogether. Because it does not rest on any allegations

---

[41] *Id.* at 1275.

[42] *Id.* at 1274 (quoting 28 U.S.C. §1738).

[43] *Id.* at 1274–75.

concerning the state court proceedings or judgment, it is not barred by *Rooker-Feldman*, and Count II cannot be dismissed on this basis.[44]

       3.      *Count III – Dismissal of State Court Judgment*

In Count III, James Lucas asks this Court to strike the damages awarded to Dadson in the Johnson County Proceeding. He also asks this Court to "dismiss" the claims raised against him during the trial and the jury's allowance of punitive damages. Unlike Count II, finding for James Lucas on Count III would require this Court to review and reject the state judgment. James Lucas does not ask this Court to decide the issue anew, but instead asks for a dismissal of the state court's decision and a grant of declaratory relief from it. This request is clearly barred by the *Rooker-Feldman* doctrine, and the Defendants properly move for dismissal on that ground.

Additionally, James Lucas's claims of allegedly false statements and charges are inextricably intertwined with the state court decision. As James Lucas himself states, "[t]he negative results in that case were based upon wholly manufactured 'evidence.' "[45] He also notes that "the only 'evidence' presented by the Defendants for this claim of breach was the patently false testimony of [Peter Lucas]."[46] Again, James Lucas uses phrases like "relying on" and "leading to" when describing the relationship between the testimony and the jury's verdict.[47] It therefore seems clear that these statements are not separable from, or collateral to, the state-court judgment. Thus, the decision and allegedly false statements are inextricably intertwined.

This Court cannot dismiss and effectively overturn a state-court ruling. It also cannot dismiss the statements made by Peter Lucas at the Johnson County Proceeding, as they are

---

[44] Although alternate grounds may exist to dismiss this claim, they are not raised by Defendants. Further, as subsequent discussion will make clear, the Court need not address those alternate grounds.

[45] Am. Compl., Doc. 12, p. 8.

[46] *Id.* at p. 9.

[47] *Id.* at p. 8.

inextricably intertwined with that ruling. This Court does not have subject matter jurisdiction over Count III. Count III is therefore dismissed.

### 4. Count IV – Breach of Contract

In Count IV, James Lucas asks this Court to impose damages against Defendants for breach of contract. James Lucas asserts that a state-court order requiring him to pay Pamela Lucas's attorney fees, stemming from their divorce proceeding, violated the Johnson County Proceeding settlement agreement. Plaintiff does not ask this Court to review the state-court's decision to award attorney fees. Instead he seeks relief through an award for breach of the settlement agreement. Because the alleged breach is separable from, and collateral to, the state-court decision awarding attorney fees, the two issues are not inextricably intertwined. Therefore, this Court is not barred from hearing Count IV by the *Rooker-Feldman* doctrine as asserted by Defendants.[48]

## B. Lack of Personal Jurisdiction

Defendants Peter Lucas and Dadson also contend that they are entitled to dismissal because this Court lacks personal jurisdiction over them. James Lucas has the burden of making prima facie showing that the court may properly exercise personal jurisdiction.[49] To determine whether James Lucas has met this burden, the Court looks to his complaint.[50]

In his amended complaint, James Lucas asserts that Peter Lucas is a resident of the state of Missouri and that Dadson is located in Missouri. James Lucas further asserts that he is a resident of Kansas. The only other facts listed under the "JURISDICTION" heading of the complaint are

---

[48] Defendants also raise challenges for failure to join an indispensable party and insufficient process. Peter Lucas raises an additional challenge because of a concurrent lawsuit, but the Court's other rulings on jurisdictional grounds make it unnecessary to address these challenges.

[49] *Shrader*, 633 F.3d at 1239.

[50] *Walker v. Mohiuddin*, 947 F.3d 1244, 1248–49 (10th Cir. 2020) (quoting *Cummings v. Dean*, 913 F.3d 1227, 1238 (10th Cir. 2019)).

that the breach and fraud claims fall within the statute of limitations, and that this Court has diversity jurisdiction over the claims. Plaintiff James Lucas does not assert any actions by Peter Lucas or Dadson that took place in Kansas, with the exception of their involvement in the Johnson County Proceeding. Thus, James Lucas makes no claims in his amended complaint that this Court has personal jurisdiction over either defendant.

In response to Defendants' motions to dismiss, however, James Lucas asserts that he frequently conducted business for Dadson in Kansas while acting as CEO and COB. He also claims that Peter Lucas was a part of those meetings while acting as COO and continued to meet in Kansas after being promoted to president of Dadson. These assertions are clearly made in an attempt to draw his complaint within the Kansas long-arm statute. Although the Kansas long-arm statute states that acting as an officer of a corporation that has a place of business in Kansas acts as a submittal to personal jurisdiction,[51] Plaintiff's new assertions are not present in the amended complaint. That document only states that Peter Lucas is a resident of Missouri and Dadson is also located in Missouri. Even with all reasonable inferences and consideration of his pro se status, James Lucas has not alleged any facts in his amended complaint that place Peter Lucas or Dadson in the state of Kansas outside of the Johnson County Proceeding. Because this Court must rely only on the complaint, the remaining counts must be dismissed for lack of personal jurisdiction. Counts II, IV, and V are therefore dismissed.

## IV.     Conclusion

Counts I and III are dismissed for lack of subject matter jurisdiction. Counts II, IV, and V are dismissed for lack of personal jurisdiction. Although the Defendants also assert failure to join a necessary party, insufficient service, and that a concurrent lawsuit bars this Court from hearing

---

[51] K.S.A. 60-308(b)(1)(F).

the claims against Peter Lucas, this Court need not reach those issues as all counts are dismissed on jurisdictional grounds.

**IT IS THEREFORE ORDERED** that Defendant Peter B. Lucas's Motion to Dismiss (Doc. 13) is **GRANTED.**

**IT IS THEREFORE ORDERED** that Defendant Dadson Manufacturing Corporation's Motion to Dismiss (Doc. 14) is **GRANTED.**

**IT IS SO ORDERED.**

This case is closed.

Dated this 7th day of July, 2021.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE